┌─────────────────────────────────────────────────────────┐
|               **NOT FOR PUBLICATION WITHOUT THE**               |
|              **APPROVAL OF THE APPELLATE DIVISION**             |
| This opinion shall not "constitute precedent or be binding upon any court." |
| Although it is posted on the internet this opinion is binding only on the |
| parties in the case and its use in other cases is limited. R.1:36-3. |
└─────────────────────────────────────────────────────────┘

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3020-15T2

WILMINGTON TRUST, NATIONAL
ASSOCIATION,[1]

    Plaintiff-Respondent,

vs.

MEIR ASSOULIN and JOY ROSE
ASSOULIN, Husband and Wife,

    Defendants-Appellants.

_____

        Argued telephonically January 25, 2017 —
        Decided April 21, 2017

        Before Judges Hoffman and Whipple.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Monmouth County, Docket No.
        F-4829-13.

        James G. Aaron argued the cause for appellants
        (Ansel Grimm & Aaron, P.C., attorneys; Mr.
        Aaron, of counsel and on the briefs; Jay B.
        Feldman, on the briefs).

---

[1] By order dated May 8, 2015, the complaint was amended by striking the name of JP Mortgage Acquisition Corp. (JP Mortgage), as the party plaintiff. Wilmington Trust, National Association, not in its Individual Capacity, but Solely as Trustee for VM Trust Series 3, A Delaware Statutory Trust (Wilmington Trust), was substituted as the party plaintiff.

Gene R. Mariano argued the cause for respondent (Parker McCay, P.A., attorneys; Mr. Mariano, of counsel and on the brief; Stacy L. Moore, Jr., on the brief).

PER CURIAM

Defendants Meir Assoulin[2] and Joy Rose Assoulin appeal from the Chancery Division's May 8, 2015 order reinstating the foreclosure action against defendants and substituting Wilmington Trust, as party plaintiff in place of JP Mortgage. In reviewing defendants' arguments presented on appeal, generally at issue is JP Morgan's standing to seek reinstatement of the foreclosure action and the substitution of Wilmington Trust as plaintiff. Following our review of the record and applicable law, we affirm.

I.

On May 31, 2005, Meir executed a $750,000 promissory note, with a yearly interest rate of six-and-a-half percent, in favor of JP Morgan. The note matured on June 1, 2035, and required a monthly payment of $4,740.51. On the same date, defendants executed a mortgage on their "summer home" in Deal, as security for the note. JP Morgan recorded the mortgage on June 17, 2005.

JP Morgan sent a notice of default and intention to foreclose to defendants on June 20, 2012. The notice stated defendants had

---

[2] In this opinion we refer to Meir Assoulin individually as Meir.

not made a monthly payment since September 2011, and advised they could cure their default if they paid $51,234.47 by July 23, 2012.

On February 13, 2013, JP Morgan filed a complaint against defendants, seeking to foreclose on the property in Deal. Defendants filed their answer and counterclaim on April 1, 2013. On December 4, 2013, JP Morgan filed motions for summary judgment on its claims and to strike defendants' counterclaim and third-party complaint. On January 17, 2014, the trial court granted JP Morgan's motions.

On January 13, 2015, JP Morgan assigned the mortgage to plaintiff. Plaintiff recorded the assignment on March 23, 2015. By that date, however, the Superior Court Clerk's Office had dismissed JP Morgan's case for lack of prosecution, pursuant to Rule 4:64-8, with the filing of an administrative dismissal order on February 27, 2015.

On April 22, 2015, JP Morgan filed a motion to reopen the foreclosure action against defendants and substitute Wilmington Trust as plaintiff. JP Morgan's counsel certified he had sent fourteen-day notices to defendants and requested "[j]udgment figures" from JP Morgan at "the conclusion of the litigation." On March 20, 2014, JP Morgan's counsel sent a certification of amount due to JP Morgan for review and execution. According to its counsel, "[t]his matter did not advance to [f]inal [j]udgment

because there were a number of complexities and unresolved issues with the [c]ertificat[ion] of [a]mount [d]ue that had to be addressed prior to the [f]inal [j]udgment [m]otion being filed."

Earlier, on November 3, 2014, JP Morgan assigned this foreclosure to a new servicer. On December 4, 2014, the new servicer told JP Morgan's counsel to proceed with the foreclosure. Because JP Morgan anticipated assigning the mortgage, its counsel waited for the assignment in order to file the motion to substitute JP Morgan with Wilmington Trust as plaintiff. JP Morgan's counsel received the lack of prosecution dismissal warning on January 23, 2015, but "the complexities and issues that hampered the completion of the [c]ertification of [a]mount [d]ue were not resolved in time to avoid dismissal for lack of prosecution along with the service transfer and the required new [a]ssignment of [m]ortgage." JP Morgan's counsel therefore "submitted that good cause ha[d] been established" to reinstate its foreclosure action. JP Morgan's motion also included its assignment of the mortgage to plaintiff.

On April 28, 2015, defendants opposed JP Morgan's motion. Meir certified the trial court would cause him prejudice if it granted JP Morgan's motion. He explained that the court had stricken his answer, so he would not be able "to put [p]laintiff to its tests as to the appropriateness of the alleged sale of the

mortgage." He did not contend JP Morgan lacked standing to file its motion.

The trial court granted JP Morgan's motion on May 7, 2015. The court found JP Morgan established good cause under Rule 4:64-8, because "there were problems with the servicers." The next day, the court reinstated JP Morgan's case under Rule 4:64-8, struck JP Morgan's name from the complaint, and substituted it with plaintiff's name.

In September 2015, plaintiff filed its motion for final judgment in foreclosure. It included a certification of amount due, stating plaintiff owned and held the note and mortgage, and Meir owed $857,324.93. On October 29, 2015, the trial court entered final judgment against defendants. This appeal followed.

II.

Defendants argue the Chancery Division erred three times. First, the trial court should not have considered JP Morgan's motion to reinstate its complaint and substitute Wilmington Trust as plaintiff because JP Morgan lacked standing. Second, the trial court's decision resulted in an inequity. Third, the trial court should have required plaintiff to send them a notice of intent to foreclose. We reject these arguments and affirm the trial court.

## A. Standing

"The issue of standing presents a legal question subject to our de novo review." Courier-Post Newspaper v. Cty. of Camden, 413 N.J. Super. 372, 381 (App. Div. 2010) (citation omitted). The New Jersey Supreme Court defines standing broadly and does not restrict New Jersey courts to the rigid "case or controversy" requirement under Article III, § 2 of the United States Constitution. Salorio v. Glaser, 82 N.J. 482, 490 (1980). The New Jersey Constitution "contains no analogous provision limiting the subject-matter jurisdiction of the Superior Court." Id. at 491 (citing N.J. Const. art. VI, § 3, ¶ 2). New Jersey courts remain "free to fashion [their] own law of standing consistent with notions of substantial justice and sound judicial administration." Ibid.

Rule 4:26-1 "is ordinarily determinative of standing to prosecute an action." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:26-1 (2016). Rule 4:26-1 states, "Every action may be prosecuted in the name of the real party in interest . . . ." New Jersey courts "have traditionally taken a generous view of standing in most contexts." In re Protest of Award of N.J. State Contract A71188 for Light Duty Auto. Parts, 422 N.J. Super. 275, 289 (App. Div. 2011) (citations omitted).

> Without ever becoming enmeshed in the federal
> complexities and technicalities, [New Jersey

A-3020-15T2

courts] have appropriately confined litigation to those situations where the litigant's concern with the subject matter evidenced a sufficient stake and real adverseness. In the overall [New Jersey courts] have given due weight to the interests of individual justice, along with the public interest, always bearing in mind that throughout [their] law [they] have been sweepingly rejecting procedural frustrations in favor of "just and expeditious determinations on the ultimate merits."

[Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 107-08 (1971) (citations omitted).]

"A financial interest in the outcome ordinarily is sufficient to confer standing." EnviroFinance Group, LLC v. Envtl. Barrier Co., LLC, 440 N.J. Super. 325, 340 (App. Div. 2015) (citation omitted). "Ordinarily, a litigant may not claim standing to assert the rights of a third party. However, standing to assert the rights of third parties is appropriate if the litigant can show sufficient personal stake and adverseness so that the [c]ourt is not asked to render an advisory opinion." Jersey Shore Med. Center-Fitkin Hosp. v. Estate of Baum, 84 N.J. 137, 144 (1980) (internal citations omitted).

Rule 4:34-3 states, "In case of any transfer of interest, the action may be continued by or against the original party, unless the court on motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party."

A-3020-15T2

Defendants argue JP Morgan lacked standing to file its motion to reinstate its foreclosure action because it no longer owned or held the mortgage. Rule 4:26-1 and 4:34-3 anticipated these circumstances and allowed JP Morgan to file a motion to reinstate its case unless the court had already substituted the subsequent party of interest. We discern no reason to conclude JP Morgan lacked the requisite "sufficient personal stake and adverseness so that the [c]ourt is not asked to render an advisory opinion." Estate of Baum, supra, 84 N.J. at 144 (citations omitted). We therefore decline to reverse on this basis.

## B. Equity

"As a mortgagee resorting to a court of equity to enforce its security, plaintiff exposed itself to the operation of equitable principles and must submit to an equitable resolution." Totowa Sav. & Loan Assoc. v. Crescione, 144 N.J. Super. 347, 352 (App. Div. 1976) (citations omitted). General equitable principles apply in foreclosure actions, including the principle that "he who seeks equity must do equity." Sovereign Bank, FSB v. Kuelzow, 297 N.J. Super. 187, 197 (App. Div. 1997). "In this respect, equity follows the common law precept that no one shall be allowed to benefit by his own wrongdoing. Thus, where the bad faith, fraud or unconscionable acts of a petitioner form the basis of his

8

lawsuit, equity will deny him its remedies." Rolnick v. Rolnick, 290 N.J. Super. 35, 45 (App. Div. 1996) (citations omitted).

Defendants argue the trial court improperly denied them discovery regarding defenses against plaintiff, specifically whether JP Morgan had properly assigned the mortgage to plaintiff and whether plaintiff had violated the Uniform Commercial Code. JP Morgan included its assignment to plaintiff in its motion to reinstate its case and substitute Wilmington Trust as plaintiff. Defendants had the opportunity to review and contest the assignment at that time. They do not argue the trial court erred in substituting Wilmington Trust for JP Morgan, presumably because the record does not show JP Morgan failed to assign the mortgage to plaintiff or any other defect in the assignment under New Jersey law or the Uniform Commercial Code. We therefore conclude the trial court's order complied with "equitable principles," resulting in an "equitable resolution." See Totowa Sav. & Loan Assoc., supra, 144 N.J. Super. at 352 (citations omitted).

### C. Notice of intent to foreclose

N.J.S.A. 2A:50-56 states:

> Upon failure to perform any obligation of a residential mortgage by the residential mortgage debtor and before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation and commence any foreclosure or other legal action to take possession of the residential property which is the subject of the mortgage, the

9

residential mortgage lender shall give the residential mortgage debtor notice of such intention at least 30 days in advance of such action as provided in this section.

Defendants argue Wilmington Trust should have sent them a notice of intention to foreclose. We disagree. N.J.S.A. 2A:50-56 requires a foreclosure plaintiff to send a notice of intention to foreclose to a defendant before commencing a foreclosure action. Wilmington Trust did not commence this foreclosure action against defendants, JP Morgan did, and it sent defendants a notice of intention. We therefore affirm the trial court.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION